CATALYST ENERGY DEVELOPMENT
CORPORATION, Plaintiff,

v.

IRON MOUNTAIN MINES,
INC., Defendant.

No. 85 Civ. 4735 (LFM).

United States District Court,
S.D. New York.

April 9, 1986.

See also, D.C., 108 F.R.D. 427.

Milberg Weiss Bershad Spechthrie & Lerach by Jared Spechthrie, New York City, and Wegis, Klein, Wegis & Duggan, Bakersfield, Cal., for defendant.

Henderson & Koplik by Jeffrey C. Carter, New York City, for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendant, Iron Mountain Mines, Inc. ("IMMI"), moves, pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss plaintiff's complaint for lack of personal jurisdiction.

## FACTS

In February 1984, plaintiff, Catalyst Energy Development Corporation ("Catalyst"), a New York corporation, entered into an agreement with IMMI, a corporation headquartered in California, whereby Catalyst agreed to fund a hydroelectric project on property owned by IMMI in Redding, California. The agreement was executed in Sacramento, California, and required Catalyst to make an initial down payment to IMMI of $50,000 and a later payment of $450,000.

IMMI directed Catalyst to deposit a $50,000 check, payable to IMMI in IMMI's bank account at Irving Trust Company in New York City. Catalyst took back from IMMI a $50,000 promissory note which was executed in California but made payable to Catalyst in New York, and which, by its terms, was to be governed and construed in accordance with New York law.

When the energy development agreement between the parties eventually collapsed, Catalyst brought this action to collect on IMMI's promissory note. A default judgment was entered against IMMI but was later vacated for improper service of process.

IMMI now moves to dismiss the complaint on the ground that there are insufficient contacts between IMMI and New York to satisfy constitutional standards for the exercise of personal jurisdiction over IMMI.

## DISCUSSION

Plaintiff bears the burden of showing that this court has personal jurisdiction

over defendant IMMI.[1] Plaintiff need only make a prima facie showing of jurisdiction at this time, however, because we are deciding the question of personal jurisdiction solely on the basis of affidavits and documentary material.[2] Eventually, however, plaintiff must show by a preponderance of the evidence, at a pretrial hearing or at trial, that this court has personal jurisdiction over defendant.[3]

Catalyst does not contend that jurisdiction over IMMI may be predicated upon IMMI's general presence in New York. Rather, plaintiff invokes New York's long-arm statute, Section 302 of the New York Civil Practice Law and Rules ("CPLR"), which, in pertinent part, provides:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state....

Catalyst contends that IMMI transacted business in New York when it deposited the $50,000 down payment in IMMI's New York bank account, pursuant to contract and at IMMI's express direction. In addition, plaintiff contends that the following factors are jurisdictionally significant: (1) the promissory note was payable to Catalyst in New York; (2) the promissory note states that it is to be governed and construed in accordance with New York law; and (3) IMMI directed numerous telephone and written communications to New York regarding the $50,000 down payment and negotiation of the note.

Our inquiry begins with *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which established that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [4] A defendant must "purposefully avail itself of the privilege of conducting activities within the forum State." [5] Further, due process requires that "the defendant's conduct and connection within the forum State are such that he should reasonably anticipate being haled into court there." [6]

In determining whether there are sufficient minimum contacts with New York to subject a defendant to *in personam* jurisdiction, "the totality of the defendant's activities within the forum" must be analyzed.[7]

In the present case, IMMI never physically entered New York through any of its corporate officers or agents to transact business. Nevertheless, IMMI, in its letter of March 22, 1984 to Catalyst, specifically directed Catalyst to deposit the $50,000 down payment in IMMI's bank account at the Irving Trust Company in New York City. IMMI contends, however, that the $50,000 deposit was the action of Catalyst, not of IMMI, and that therefore Catalyst cannot bootstrap its own activities as a basis for this court's exercise of jurisdiction over IMMI.

---

**1.** *Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337, 339 (S.D.N.Y.1981); *Selman v. Harvard Med. School,* 494 F.Supp. 603, 610 (S.D. N.Y.), *aff'd without opinion,* 636 F.2d 1204 (2d Cir.1980).

**2.** *Mayes v. Leipziger,* 674 F.2d 178, 182 n. 3 (2d Cir.1982); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

**3.** *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983).

**4.** *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)

(quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) ).

**5.** *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

**6.** *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

**7.** *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 & n. 5, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1966).

IMMI cites *Masonite Corp. v. Hellenic Lines, Ltd.,* 412 F.Supp. 434 (S.D.N.Y. 1976), for the proposition that deposits by a plaintiff into a non-resident defendant's New York bank account are not attributable to the defendant for jurisdictional purposes. *Masonite* is distinguishable from the present case, however, because, in *Masonite,* "the payments were not made pursuant to any contract between [the parties]."[8] Here, IMMI directed Catalyst, pursuant to contract, to deposit the $50,000 for IMMI's benefit in IMMI's bank account.

We find the $50,000 deposit attributable to IMMI since "a defendant may be found to have engaged in a purposeful transaction when the contract calls for the plaintiff to perform activities in New York for the benefit of the defendant."[9]

IMMI maintains, however, that plaintiff's cause of action arose, not out of the deposit of money in IMMI's bank account, but out of the execution of the promissory note, which, as plaintiff concedes, occurred outside New York. As the Second Circuit stated in *Lewis & Eugenia Van Wezel Foundation, Inc. v. Guerdon Industries, Inc.,* 450 F.2d 1264, 1267 (2d Cir.1971), "[w]e cannot go along with such a wooden approach." In that case, plaintiff brought suit to collect on several promissory notes executed outside New York. The defendant argued that the transaction of business was the signing of the notes. Since the notes were all signed outside New York, defendant contended, the transaction of business occurred outside New York, and defendant was therefore not subject to New York's long-arm jurisdiction under CPLR § 302(a)(1).[10]

The Second Circuit rejected this "wooden approach" and instead looked to the substance of the transaction. The court held that "[t]he transaction of business ... was the borrowing of money," not simply the execution of the notes.[11] To hold otherwise, the court stated, "would exalt form over substance and defeat the purpose of CPLR § 302(a)(1)."[12]

Similarly, in this case, the fact that the promissory note was not executed in New York does not dispose of the jurisdictional issue. The underlying transaction of business out of which plaintiff's cause of action arose was the deposit of $50,000 in defendant's bank account.

We think *Sterling Nat'l Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir.1975), controlling here. There, plaintiff brought suit to collect on a $2,000,000 promissory note executed in Florida but payable to plaintiff in New York. The proceeds of the note were deposited by plaintiff, at defendant's direction, in defendant's New York bank account. The Second Circuit upheld jurisdiction in New York over the defendant maker of the note based on the totality of the defendant's New York contacts. The court held:

> These facts show sufficient purposeful activity in New York by [defendant] to constitute the transaction of business within the meaning of Section 302(a)(1). Although the loan was first solicited by [plaintiff] and the note executed in Florida, the transaction in its entirety had close connections with New York. [Defendant] was not only fully aware of these contacts but also instrumental in creating them.[13]

Here, the totality of defendant's contacts with New York convinces us that plaintiff has at least made a prima facie showing

**8.** *Masonite Corp. v. Hellenic Lines, Ltd.,* 412 F.Supp. 434, 438 (S.D.N.Y.1976).

**9.** *Wichita Fed. Sav. & Loan v. Comark,* 586 F.Supp. 940, 944 (S.D.N.Y.1984). In light of this finding, we need not decide whether the Irving Trust Company was, as plaintiff contends, IMMI's agent through which IMMI transacted business in New York by accepting the $50,000 down payment.

**10.** 450 F.2d at 1267.

**11.** *Id.*

**12.** *Id.*

**13.** 510 F.2d at 874; *see also Banco Ambrosiano v. Artoc Bank,* 62 N.Y.2d 65, 72–73, 476 N.Y.S.2d 64, 464 N.E.2d 432 (1984) (quasi-in-rem jurisdiction).

that IMMI could "reasonably anticipate being haled into court" in New York.[14] In addition to the deposit of funds at defendant's direction in its New York bank account, the following factors add to IMMI's New York contacts: (1) the note was made payable in New York;[15] (2) the note was to be governed and construed in accordance with New York law;[16] and (3) defendant directed telephone and written communications to New York in connection with the making of the note.[17]

Accordingly, defendant's motion, pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss plaintiff's complaint for lack of personal jurisdiction is in all respects denied.

So ordered.

**14.** *World-Wide Volkswagen Corp. v. Woodson,* *supra,* 444 U.S. at 297, 100 S.Ct. at 567.

**15.** *See Sterling Nat'l Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975) (fact that promissory note is payable in New York may be considered in determining personal jurisdiction).

**16.** *Burger King Corp. v. Rudzewicz,* —— U.S. ——, ——, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985) ("Nothing ... suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes.... [A choice-of-law provision may reinforce a defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of litigation there").

**17.** *China Union Lines, Ltd. v. American Marine Underwriters,* 454 F.Supp. 198, 202 (S.D.N.Y. 1978) (oral and written communications directed to New York regarding the transaction at issue may be considered by the court in determining personal jurisdiction).